# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MEDARC, LLC, as Collection Agent for** | § | |
| **Jeffrey H. Mims, Trustee of the Liquidating** | § | |
| **Trust of Revolution Monitoring, LLC,** | § | |
| **Revolution Monitoring Management, LLC,** | § | |
| **and Revolution Neuromonitoring, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-3646-N-BH** |
| | § | |
| **AETNA HEALTH INC.,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge[1]** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court are *Defendant Aetna Health Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support*, filed January 29, 2021 (doc. 8), and *Plaintiff's Motion for Leave to File a Surreply*, filed March 12, 2021 (doc. 18). Based upon the relevant filings and applicable law, the motion to dismiss should be **DENIED**. The motion for leave to file a surreply is **DENIED AS MOOT**.

## I. BACKGROUND

MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (Plaintiff), brings this action against Aetna Health Inc. (Defendant) to recover payments for out-of-network medical services rendered to patients covered by health insurance plans. (*See* doc. 2-3.)[2]

Prior to bankruptcy, Revolution Monitoring, LLC, Revolution Monitoring Management,

---

[1]By order of reference dated January 26, 2021 (doc. 6), this case has been referred for pretrial management..

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

LLC, and Revolution Neuromonitoring, LLC (collectively Revolution) were medical providers of intraoperative neurophysiological monitoring (IONM) medical services for operations around delicate parts of the nervous system. (*Id.* at 5-6.) IONM technology provides "real-time" monitoring of the state of the nervous system during surgery, which alerts surgeons of potential evolving neurologic injury in order to allow for corrective actions to avoid permanent injury or death. (*Id.* at 6.)  These medical services are primarily utilized in spinal, cranial, facial, throat, and peripheral surgeries. (*Id.*)

Defendant is a business that provides, underwrites, and administers health insurance benefits of Texas residents, including patients who received Revolution's IONM medical services (Insureds). (*Id.* at 7.) Most of the Insureds are covered by private employee welfare benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA), but some of them are covered by non-ERISA health benefit plans.[3] (*Id.* at 7-8.)  These plans are either fully-insured plans, which means an insurance company assumes financial responsibility for paying medical claims and administrative costs, or self-insured plans, which means an employer acts as the insurer and assumes financial responsibility for payment of medical claims. (*Id.* at 7.)  Generally, insurance companies like Defendant are retained to administer self-insured plans and are provided "discretionary authority over the management of the plans, the disposition of the plan assets, and the adjudication of claims." (*Id.*)  The plans obligate Defendant to pay in accordance with the Insured's right to receive reimbursement for out-of-network care, and they establish an allowable amount to be paid for medical services provided by out-of-network providers like Revolution. (*Id.* at 13.)  As an out-of-

---

[3]The non-ERISA plans are categorized as "government plans," where "state or local government entities contract with Defendant to administer health benefits to their employees," or "private plans," where "individuals contract with Defendant to administer health benefits." (doc. 2-3 at 14.)

network provider, Revolution does not have pre-determined rates under the plans. (*Id.* at 6.)

From between June 2014 and July 2017, Revolution provided out-of-network medical services to Insureds and followed the same process. (*Id.* at 9.)  It received orders from physicians to schedule its IONM medical services in connection with Insureds' medical procedures to be performed at physicians' surgical facilities. (*Id.*)  After receiving orders and before rendering medical services, Revolution obtained verification from Defendant that "each patient was covered by a health benefit plan that provided out-of-network benefits," that "the particular procedures were covered by the relevant health benefit plan," and that it "would be paid in accordance with the health benefit plan." (*Id.*) During the verification process, Defendant did not identify or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans, including any anti-assignment provisions. (*Id.*)  Plaintiff alleges that "Revolution would not have provided these services to these patients without first obtaining this verification from Defendant." (*Id.*)

Each Insured also executed an "assignment of benefits" form (AOB), assigning Revolution in relevant part, "(1) the rights and interest to collect and be reimbursed for the medical service(s) performed for the patient; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5) the reasonable assistance of the patient in pursuing third-party payments." (*Id.* at 7.)  Specifically, the AOB provides in relevant part:

> **Signature below also consents to request Revolution Monitoring, LLC to submit all invoices associated with the professional services performed during my surgery to my designated insurer or health benefits plan, on my behalf. I consent to and request that my insurance company reimburse Revolution**

3

**Monitoring, LLC directly for any invoices submitted on my behalf for professional services rendered** by the above named company. If for any reason my health benefits plan or insurance company does not reimburse Revolution Monitoring, LLC directly for services rendered on my behalf and reimburses me, I agree to send all payments by my insurer for IntraOperative Neurophysiologic Monitoring and all explanation of benefits to Revolution Monitoring immediately. Failure to remit such payment would make me legally responsible for the reimbursement of Revolution Monitoring, LLC the full amount of their professional fees, co-payments, co-insurance, or deductible amounts for which I am responsible, for delivery of IntraOperative Neurophysiologic Monitoring performed during my surgery. I am also aware that I am legally held responsible for the costs of the IntraOperative Neurophysiologic Monitoring services in my health benefits plan or insurance company fails or refuses to remit the costs for such services.

**I authorize Revolution Monitoring, LLC and/or its attorneys to file any necessary claims, demands, or appeals with my insurer or health benefits plan from a denial of reimbursement or coverage for IntraOperative Neurophysiologic Monitoring services provided on my behalf. I also assign Revolution Monitoring, LLC my rights to bring legal action, if needed, against my insurer or health benefits plan to recover the costs of or enforce my rights to coverage of IntraOperative Neurophysiologic Monitoring services under my insurance or health benefits plan under applicable law, including without limitation under the Employee Retirement Income Security Act of 1974.**

I understand that Revolution Monitoring, LLC may disclose personal health information (PHI) related to receipt of professional services for the purpose of enacting such as actions as defined above. I agree to provide the necessary information to and reasonably cooperate with and assist Revolution Monitoring to pursue third party payments of my claims for IntraOperative Neurophysiologic Monitoring services.

(*Id.* at 10-11, 27 (emphasis added).)

After medical services were performed, Plaintiff or Revolution submitted claims through Defendant's designated claims-handling channels, but the claims were either denied or drastically underpaid. (*Id.* at 11.) Their appeals of the non-payment or underpayment of the claims via Defendant's designated appeals channels were also denied. (*Id.*) "Defendant failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any

exclusions, conditions, or other prerequisites within the health benefit plans, including but not limited to any anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse determination." (*Id.* at 11-12.) It maintained that "(1) the claim was paid in accordance with the Allowable Amount; (2) the administrator maintained the prior decision; or (3) the claim was processed correctly." (*Id.* at 12.) Revolution billed Defendant more than $40,000,000 for services rendered to Insureds but was paid less than $750,000, or less than 2% of the amount billed. (*Id.* at 12-13.)

In November 2016, Revolution entered into a Healthcare Receivables Master Purchase and Sales Agreement with Xynergy Healthcare Capital II LLC (Xynergy), providing its accounts receivable as security. *See In re Revolution Monitoring, LLC, et al.*, No. 18-33730-hdh-11 (N.D. Tex. Bank.) (Revolution Bankr., doc. 139 at 27).  Xynergy later sued in the Southern District of Florida to enforce the agreement, and on May 18, 2018, it obtained a favorable judgment against Revolution in the principal amount of $1,681,767.57 (Judgment). (*Id.*)

Shortly thereafter,  between September 27, 2018 and October 5, 2018, Revolution filed for Chapter 11 bankruptcy in the Northern District of Texas. (doc. 2-3 at 18.) On July 23, 2019, the bankruptcy court entered an order confirming the Debtors' Second Joint Plan of Reorganization (Bankruptcy Plan), which among other things, provided for the creation of a Liquidating Trust, the appointment of Jeffrey H. Mims as Liquidating Trustee, and the appointment of Plaintiff to serve as Collection Agent. (*Id.*)  On August 5, 2019, the Liquidating Trust Agreement (LTA) was filed in accordance with the Bankruptcy Plan. (*See* Revolution Bankr., doc. 146.)  Under the terms of the Bankruptcy Plan and LTA, Plaintiff received "full authority regarding the Accounts Receivable to:

5

(i) bill, rebill, and collect the Medical Receivables; (ii) bring lawsuits and settle lawsuits; (iii) negotiate, bring, enforce and settle claims, together with all lawful actions necessary for collection thereof; (iv) enter into collection agreements with third-party collection agencies; (v) enter into engagement agreements with law firms to commence legal adjudication of collections, on behalf of the Debtors and the Liquidating Trustee." (*Id.*, doc. 139 at 17-18.)  Xynergy assigned its rights and interests to the Judgment to Plaintiff, authorizing it to collect the amounts covered by the Judgment, as secured by Revolution's accounts receivable. (*Id.* at 27-31.)

Plaintiff's amended complaint asserts claims for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), for attorneys' fees under § 1132(g)(1), and for breach of contract. (doc. 2-3 at 18-23.) It alleges that Defendant underpaid Revolution on more than 200 claims totaling approximately $40 million in rendered medical services. (*Id.* at 3.) It claims that the "services were medically appropriate and necessary, covered by the applicable plan terms, and the claims should have been paid to Revolution as the [ ] Insureds' lawful assignee." (*Id.* at 17.)  It also claims that Plaintiff has standing to pursue this action against Defendant because Revolution received valid assignments of all the benefits provided to the Insureds under the plans, and those benefits were subsequently assigned to Plaintiff. (*Id.* at 19-22.)

On January 29, 2021, Defendant moved to dismiss Plaintiff's amended complaint under Rules 12(b)(1) and 12(b)(6). (doc. 8.)  Plaintiff responded on February 19, 2021, and Defendant replied on March 5, 2021. (docs. 13, 15.)

## II.  RULE 12(b)(1)

Defendant moves to dismiss all of Plaintiff's claims under Rule 12(b)(1) for lack of standing. (doc. 8 at 8-14.)

A.    **Legal Standard**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges

a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts

of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the

power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

(citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the

burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v.

Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any

stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S.

500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the

subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th

Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the

court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal

under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from

pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule

12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with

prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the

complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson*

*v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.*

Here, Defendant relies solely on Plaintiff's amended complaint in support of its motion to dismiss for lack of subject matter jurisdiction. The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13; *see also Crowder v. Vill. of Kaufman, Ltd.*, No. 3:09-CV-2181-M, 2010 WL 2710601, at *1 (N.D. Tex. July 7, 2010) (citations omitted) ("A 12(b)(1) motion that challenges standing based on the pleadings is considered a facial attack, and the court reviews only the sufficiency of the allegations in the pleading, presuming them to be true.").

**B.**    <u>**Standing to Recover ERISA Benefits**</u>

Defendant argues that Plaintiff lacks standing to assert claims for ERISA benefits. (doc. 8 at 8-14.)

"The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498 . "The inquiry has two components: constitutional limits, based on the case-and-controversy clause in Article III of the Constitution; and prudential limits, crafted by the courts." *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). "To meet the [Article III] constitutional standing requirement, a

plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (quoting *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001)) (alteration in *St. Paul Fire & Marine Ins. Co.*).  Prudential standing relates to whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

The argument that a plaintiff lacks standing to assert a claim for benefits under ERISA implicates prudential standing, as it "challenges [the] plaintiff's ability to assert a claim under a particular statute, i.e., ERISA." *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*, No. CV H-17-2364, 2017 WL 6561165, at *4 (S.D. Tex. Dec. 22, 2017).[4]  "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795, n. 2 (5th Cir. 2011).  Nevertheless, the Fifth Circuit has long held that "standing to bring an action founded on ERISA is a 'jurisdictional' matter," *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006), and "is subject to challenge through Rule

---

[4]Even though Defendant does not argue that Plaintiff lacks constitutional standing, "the Court's independent obligation to assure itself of its jurisdiction requires it to examine the constitutional dimension of standing in addition to any statutory standing analysis. *Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Tex.*, No. SA-19-CV-01211-OLG, 2020 WL 7017739, at *3 (W.D. Tex. Apr. 22, 2020) (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 & n. 1 (5th Cir. 2002)). The amended complaint alleges that Plaintiff sustained damages from Defendant's failure to pay for medical services rendered to the Insureds, and that it would be redressed by, among other things, an award of unpaid benefits.  Plaintiff has therefore satisfied the elements for Article III constitutional standing. *See St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539.

12(b)(1)," *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002) (finding ERISA standing "jurisdictional"); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 572 (5th Cir. 1992), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (analyzing ERISA standing as a question of subject matter jurisdiction); *accord Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020) (explaining that third-party standing pursuant to an assignment of benefits under ERISA is "jurisdictional in nature"). Accordingly, Defendant's motion to dismiss the ERISA claims for lack of standing is properly analyzed under Rule 12(b)(1). *See LeTourneau*, 298 F.3d at 353; *see, e.g., Mem'l Hermann Health Sys.*, 2017 WL 6561165, at *4 ("The court may therefore properly consider defendants' challenge to plaintiff's standing under Rule 12(b)(1).").[5]

### 1. Revolution

Defendant argues that the AOBs fail to assign the rights to medical benefits under the health plans to Revolution. (doc. 8 at 9.)

Under Section 502(a) of ERISA, a participant or beneficiary is authorized to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting 29 U.S.C. § 1132(a)(1)(B)). "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d

---

[5]Defendant also argues that Plaintiff lacks standing to sue for breach of contract. As explained below, this argument implicates prudential standing and will be considered under Rule 12(b)(6).

330, 333-34 (5th Cir. 2005). While "'[h]ealthcare providers may not sue in their own right to collect benefits under an ERISA plan,' they 'may bring ERISA suits standing in the shoes of their patients' by showing that they have received assignments of rights from their patients." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 742 (5th Cir. 2015) (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015)); *see Dallas Cty. Hosp. Dist. v. Assocs. Health & Welfare Plan*, 293 F.3d 282, 285 (5th Cir. 2002) ("It is clear in this Circuit that a health care provider may possess standing under ERISA by virtue of a valid assignment."). "This is so because a plan participant's assignee is considered a beneficiary of the plan and, therefore, may bring litigation to collect benefits owed under the plan." *Rapid Tox Screen LLC v. Cigna Healthcare of Texas Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *4 (N.D. Tex. Aug. 24, 2017) (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 782 F. Supp.2d 294, 300 (S.D. Tex. 2011)) (internal quotations omitted). "In determining whether [Revolution] obtained valid assignments, the court interprets the assignments in accordance with Texas contract law principles and any ERISA plan documents in accordance with ERISA principles." *Encompass Off. Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *7 (N.D. Tex. July 31, 2017); *see Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005) ("[W]e interpret the assignment form in accordance with Texas contract law principles and the [ERISA plan documents] under ERISA principles."); *see also Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989, no writ) ("An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract.").

"An assignment is 'a manifestation to another person by the owner of a right indicating his

11

intention to transfer, without further action or manifestation of intention, his right to such other person or third person.'" *Harris Methodist Fort Worth*, 426 F.3d at 334 (quoting *Wolters Village Mgmt. Co. v. Merchants & Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir. 1955) (alternations in *Harris Methodist Fort Worth*).  "After an assignment, 'the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.'" *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981)).  As a general rule, "an assignee takes all of the rights of the assignor, no greater and no less." *F.D.I.C. v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001) (quoting *In re New Haven Projects Ltd. Liability Co. v. City of New Haven*, 225 F.3d 283, 290 n. 4 (2d Cir. 2000)).  "In other words, 'an assignee ... stands in the same position as its assignor stood.'" *Quality Infusion Care, Inc.*, 628 F.3d at 729 (quoting *Houk v. Comm'r*, 173 F.2d 821, 825 (5th Cir. 1949)).

When deciding what rights, if any, have been assigned, courts "must 'examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless.'" *Harris Methodist Forth Worth*, 426 F.3d at 334.  "In construing a written contract, the primary concern of the court is to ascertain and give effect to the parties' intentions as expressed in the instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "Contractual terms receive their ordinary and plain meaning unless the contract indicates the parties intended to give the terms a technical meaning." *Harris Methodist Fort Worth,* 426 F.3d at 334 (citation omitted).  "Although contractual terms are read in accordance with their plain meaning, if a contract is ambiguous, due to its being 'subject to two or more reasonable interpretations,' extrinsic evidence may be considered." *Banco Popular, N. Am. v. Kanning*, 638 F. App'x 328, 334 (5th Cir. 2016) (citing *id.*).

Here, Plaintiff alleges that the AOBs executed by the Insureds provide Revolution standing as a beneficiary to recover their benefits under the ERISA plans, including the amounts owed for out-of-network medical services rendered. (doc. 2-3 at 10-11, 27.)  The language in the AOB grants Revolution the rights to the payments for medical services it rendered to an Insured, as provided for under the plans; it also expressly assigns an Insured's "rights to bring legal action . . . against my insurer or health benefits plan to recover the costs of or enforce my rights to coverage of [IONM] services under my insurance or health benefits plan under applicable law, including without limitation under [ERISA]." (*Id.*) Read in its entirety, this language is sufficiently broad to not only provide Revolution the right to receive payments due under the plans for services rendered, but also to pursue legal remedies to recover such payments.

Defendant argues that the AOBs are insufficient to confer standing because they do not "assign or transfer all contractual rights to plan benefits to Revolution Monitoring, LLC, such that the member no longer had a claim to those benefits," and they instead only assign "the right to bring an action on behalf of the beneficiary, as an agent essentially, to recover the 'costs of' or to 'enforce coverage of' Revolution Monitoring, LLC's services." (doc. 8 at 10). Citing the Fifth Circuit's holding in *Hermann Hospital*, it argues that "[t]he right to sue for Revolution's costs or the right to coverage [ ] is a separate and distinct right from the right to recover plan benefits." *See* 959 F.2d at 573 (holding that "[t]he right to sue for denial of coverage is separate and distinct from the right to sue to recover payment for Plan benefits rendered [ ] and covered under the Plan").  The assignment in *Hermann Hospital* "expressly assigned to Hermann 'all rights, title and interest in the benefits payable for services rendered' while reserving to [the patient] only the right to sue 'should coverage be denied.'" *Id.*  Unlike the assignment in that case, however, the AOBs in this case assigned *both*

13

the right to sue for benefits *and* the right to sue for coverage. (*See* doc. 2-3 at 27.)

Defendant also argues that to be a valid assignment of plan benefits, the Insured's right to performance by Defendant must be "extinguished completely." (doc. 8 at 11.)  It maintains that under the AOBs, the Insureds still retain the rights to payment of plan benefits because there is no language assigning the right to recover plan benefits to Revolution. (*Id.*)  While relinquishment of control is required for an *equitable assignment*, Defendant fails to cite a Texas case where relinquishment of control was deemed an essential element of an *express assignment. See Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 402 (Tex.App.—Houston [14 Dist.] 1987, writ ref'd n.r.e.) ("An equitable assignment can be effected only by a surrender of control over the funds or property assigned.").  Nor does it provide relevant authority in support of its position that a valid assignment of ERISA benefits must include language assigning a beneficiary's right to plan benefits when, as here, the beneficiary has authorized direct payment of benefits and has assigned all rights to sue for recovery of benefits and for coverage. *See, e.g., Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Texas*, No. SA-19-CV-01211-OLG, 2020 WL 7017739, at *4  (W.D. Tex. Apr. 22, 2020) (finding assignment with no language expressly assigning the patient's right to benefits sufficient to demonstrate that patients had assigned their rights to seek recovery of ERISA benefits to medical provider); *see also In re Cooper Mfg. Corp.*, 344 B.R. 496, 508 (Bankr. S.D. Tex. 2006) (citing *United States v. Central Gulf Lines, Inc.*, 974 F.2d 621 (5th Cir. 1992) ("No words of art are required to constitute an assignme nt; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient.")).

Even though a beneficiary must do more than authorize the provider to pay directly to another for benefits owed under a plan to effect a valid assignment of benefits, the AOBs are not

"merely an authorization for direct payment." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 254 (5th Cir. 2019) (quoting *Principal Mut. Life Ins. Co. v. Charter Barclay Hosp., Inc.*, 81 F.3d 53, 56 (7th Cir. 1996)). In addition to language authorizing direct payment of benefits to Revolution, the AOBs include express language assigning to Revolution the Insureds' rights to sue for benefits and for coverage. (*See* doc. 2-3 at 27.) This satisfies Texas's requirement that an assignment must manifest an intent to grant or vest in another the right, title, or interest in the benefits payable under a policy without the need for any further action. *See Harris Methodist Fort Worth*, 426 F.3d at 335 (citation omitted). Accordingly, the language in the AOBs confers standing to sue for payment of benefits due to the Insureds under the ERISA plans on Revolution.

### 2.    *Plaintiff*

Defendant argues that even if the Insured's rights to benefits had been assigned to Revolution, Plaintiff lacks standing to sue for ERISA benefits because any right to benefits under the ERISA plans were not assigned to Plaintiff. (doc. 8 at 14.)

"In bankruptcy proceedings, standing is limited to parties in interest." *In re Cyrus II P'ship*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (citation omitted). While the United States Bankruptcy Code does not define "party in interest," the Fifth Circuit has held that the term includes any creditor of the debtor "as well as any other person with a sufficient stake in [the] outcome of a [bankruptcy] proceeding so as to require representation." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V.*, 347 F.3d 589, 595 (5th Cir. 2003). The debtor, "being insolvent," has no stake in the outcome of the bankruptcy proceeding because he "has no interest in the manner of distribution of the assets of the estate among his creditors." *Grain Co. v. Walker Grain Co.*, 285 F. 156, 157 (5th Cir. 1922) (citation omitted).

Section 541(a) of the Bankruptcy Code provides that "all legal or equitable interests of the debtor in property" become property of the bankruptcy estate at the commencement of the bankruptcy case. 11 U.S.C. § 541(a); *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997). Courts have uniformly held that "the definition of property of the estate [under § 541(a) ] is to be interpreted broadly, and includes causes of action[6] existing at the time of the commencement of the bankruptcy action." *Drew v. Anderson*, 988 F.2d 1212, at *1 (5th Cir. 1993) (per curiam) (unpublished) (discussing the legislative history of § 541(a) and collecting cases); *In re Swift*, 198 B.R. 927, 930 (Bankr. W.D. Tex. 1996) ("It is settled law that the term 'all legal and equitable interests of the debtor in property' includes causes of action which have accrued as of the commencement of the case."). Notably, courts have also held that "[c]auses of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the bankruptcy estate." *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992), *aff'd sub nom. Lawrence v. Jackson Mack Sales*, 42 F.3d 642 (5th Cir. 1994) (collecting cases).

"Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished," and the appointed bankruptcy trustee becomes "the representative of the bankruptcy estate." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam). This means the trustee "is the real party in interest with respect to claims falling within the bankruptcy estate," and he "therefore has exclusive standing to assert undisclosed claims that fall within the bankruptcy estate." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir.

---

[6] A "cause of action" "is an asset or a property right ... to which [a person] [is] entitled for the purpose of recovering real or personal property, or damages respecting that which has been unlawfully diminished in value, withheld or taken from him." *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 867 (5th Cir. 1971).

2014) (citing *Wieburg*, 272 F.3d at 306)).  Unless a cause of action is either "abandoned"[7] by the trustee "or administered in accordance with the Code," it remains property of the bankruptcy estate, and "the debtor has no standing to pursue [it]." *See Drew*, 988 F.2d at *2; *see also* 11 U.S.C. § 554(d) ("[P]roperty of the estate that is not abandoned ... and that is not administered in the case remains property of the estate.").

Here, Plaintiff alleges the Insureds assigned Revolution the rights to $40,000,000 in unpaid benefits.  Prior to Revolution's bankruptcy, Xynergy secured a lien on Revolution's accounts receivable and obtained a $1,681,767.57 judgment against it. (*See* Revolution Bankr., doc. 139 at 27.) When Revolution filed for Chapter 11 bankruptcy, its accounts receivable, including the assigned rights to $40,000,000 in unpaid benefits, became property of the bankruptcy estate. *See* 11 U.S.C. § 541(a). The Bankruptcy Plan established the Liquidated Trust "for the purpose of liquidating and distributing the Liquidating Trust Assets," and the Liquidating Trustee was appointed as "a representative of the estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code." (*See* Revolution Bankr., doc. 139 at 15.)  The Bankruptcy Plan provided that "all assets of the Debtors, including all cash, accounts receivable, patient medical records, billing records, banking records, billing ID's, billing numbers, medicare ID's, software licenses, passwords, and any other documents, licensure, or information that Debtors have previously used and relied upon, or that is necessary to effect the billing and collection of the Accounts Receivable, shall be transferred, granted, assigned, conveyed, set over, and delivered to the Liquidating Trust . . . ." (*Id.* at 16.)  It also provided that

---

[7]"[U]pon abandonment ... the trustee is ... divested of control of the property because it is no longer part of the estate.... Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *Kane*, 535 F.3d at 385. This requires affirmative action or "a clear manifestation of the trustee to abandon the claim." *Dallas Cabana, Inc.*, 441 F.2d at 867-68; *see also* 11 U.S.C. § 554(a) (requiring "[a] notice and a hearing" for the trustee to "abandon any property of the estate"). Abandonment may even require an order "or some other disposition" by the bankruptcy court. *See Dallas Cabana, Inc.*, 441 F.2d at 868.

"the Liquidating Trustee shall succeed to all of the Debtors' right, title and interest in the Liquidating Trust Assets, and the Debtors will have no further rights or interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust." (*Id.*)  The Bankruptcy Plan required the Liquidated Trustee to employ Plaintiff as "Collection Agent" with "full authority regarding the Accounts Receivable to: (i) bill, rebill, and collect the Medical Receivables; (ii) bring lawsuits and settle lawsuits; (iii) negotiate, bring, enforce and settle claims, together with all lawful actions necessary for collection thereof; (iv) enter into collection agreements with third-party collection agencies; and (v) enter into engagement agreements with law firms to commence legal adjudication of collections, on behalf of the Debtors and the Liquidating Trustee." (*Id.* at 17-18.)  It provided that the net proceeds collected by Plaintiff "shall be used to pay creditors in the order of priority set forth herein." (*Id.* at 18.)

Under the Bankruptcy Plan, Xynergy entered into a payout agreement with Plaintiff, assigning it "all right, title, and interest to any and all: Financing Agreements, UCC Liens, Lawsuits, Judgment, and Claims in Bankruptcy, as well as any and all documents, claims, causes of action whether or not filed, pending or resolved, judgments, orders, contracts, contract interests, contract positions, security agreements, security interests, security positions, liens whether or not perfected, collateral, all legal and equitable rights or interests, debts, bills, receivables, proofs of claim, and any other rights or interests appurtenant thereto, arising out of or relating to Revolution." (*Id.* at 28.) Under the agreement, Plaintiff would be paid "solely from the proceeds received from the collection of the Accounts Receivable, an amount up to and including the amount of the Judgment." (*Id.*)

The allegations in the amended complaint are sufficient to establish Plaintiff's standing to sue for the recovery of ERISA benefits.  The amended complaint alleges that the Insureds assigned

their rights to plan benefits to Revolution and that Xynergy had a secured interest in the assigned benefits. It alleges that after Revolution filed for bankruptcy, the Liquidated Trust had standing to assert claims arising under the assigned benefits because those benefits became the property of the bankruptcy estate and are held in the Liquidated Trust. It further alleges that the Liquidated Trustee is the representative of the Liquidated Trust and provided Plaintiff with full authority to file this action on behalf of the Liquidated Trust. It also alleges that Plaintiff has standing to sue for the benefits assigned to Xynergy because those benefits had been subsequently assigned to Plaintiff.

Defendant appears to argue that subsequent assignments of benefits by Revolution "are invalid because they fail to confer any rights to Plaintiff," as "there could be no intent or mutual assent regarding the rights purportedly being assigned." (doc. 8 at 12.) It contends that even though Plaintiff purports to be the "collection agent" for the Liquidating Trustee, it is actually the primary beneficiary of any recovery in this case. (*Id.* at 14.) It claims that the Ninth Circuit warned against this conduct, as it amounts to "trafficking in healthcare claims entirely removed from the interests of the plan beneficiaries." (*Id.*)

In *Simon v. Value Behavioral Health, Inc.*, the Ninth Circuit limited derivative standing to health care providers to avoid "transforming health benefit claims into a freely tradable commodity" because it was concerned that extending derivative standing beyond the health care provider "could lead to endless reassignment of claims[ ] and ... would allow third parties with no relationship to the beneficiary to acquire claims solely for the purpose of litigating them." 208 F.3d 1073, 1081 (9th Cir. 2000), *overruled by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007). Defendant fails to show how or why the chain of assignments in this case implicates those concerns, however.

Notably, the Fifth Circuit recognized that "allowing the health care provider to use an

19

assignee to recover ERISA benefits does nothing to frustrate the goals or purposes of ERISA." *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir. 2003). Rather, "granting derivative standing to the assignees of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front." *Id.* at 894. "[T]o bar health care providers from assigning their rights under ERISA, and shifting the risk of non-payment to a third-party, would chill health care providers' willingness to accept a patient." *Id.* This is because third parties "will only be willing to purchase an assignment from a health care provider if they can be assured that they will be afforded standing to sue for reimbursement." *Id.* Although the Fifth Circuit has not directly addressed derivative standing and assignments under the circumstances presented in this case, it has clearly held that "the assignee of a health care provider who has a valid assignment from the plan participant or beneficiary has derivative standing to bring a cause of action to recover benefits from an ERISA-governed employee welfare plan." *Id.* at 889.

Because Plaintiff has derivative standing to bring this action, the motion to dismiss for lack of standing should be denied.[8]

### III. RULE 12(b)(6)

**A.    Legal Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face

---

[8]Defendant argues that the AOBs apply "to Revolution Monitoring, LLC **only**, and does not extend to the other Revolution Debtors." (doc. 8 at 13 (emphasis added)). Plaintiff did not respond to this argument. As discussed, the bankruptcies of all of the Revolution entities have been consolidated in the Revolution Bankruptcy. Under the Bankruptcy Plan, the Liquidating Trust was established for all of the Revolution entities, and Plaintiff was employed as the collection agent to file this action on behalf of the Liquidating Trust. Only Plaintiff is a party to this action, and there are no claims by the Revolution Debtors, so the standing of the Revolution Debtors is not at issue and need not be addressed.

of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion.

21

*Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).  Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

A copy of the AOB is attached to the amended complaint. (*See* doc. 2-3 at 27.)  Because this document is properly considered part of the pleadings, it is unnecessary to covert the motion to dismiss into a motion for summary judgment. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

## B.    ERISA Benefits

Defendant argues that the amended complaint fails to state a plausible claim for ERISA benefits under § 502(a)(1)(B). (doc. 8 at 15-16.)

22

As discussed, a participant or beneficiary of an ERISA plan can bring a claim to recover benefits due under the terms of the plan pursuant to § 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B). "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (quotation omitted). "In asserting claims for benefits under ERISA, a plaintiff must allege in its complaint enough facts about an ERISA plan's provisions to make a [§ 502] claim plausible and provide the defendant notice as to which provisions it allegedly breached." *Advanced Physicians, S.C. v. Connecticut Gen. Life Ins. Co.*, No. 3:16-CV-2355-G, 2017 WL 4868180, at *6 (N.D. Tex. Oct. 27, 2017) (citing *Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *4 (N.D. Tex. June 28, 2016)). "As a general rule, a plaintiff asserting an ERISA benefits claim 'must provide the court with enough factual detail to determine whether the services were indeed covered services under the plan.'" *Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Texas*, No. SA-19-CV-01211-OLG, 2020 WL 7017739, at *5 (W.D. Tex. Apr. 22, 2020) (citing *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11–CV–2205–D, 2012 WL 5868249, at *2 (N.D. Tex. Nov. 20, 2012). "Absent such allegations, a complaint fails to state a claim under ERISA § 502(a)(1)(B)." *Texas Gen. Hosp., LP*, at *4 (citing *Paragon Office Services LLC*, 2012 WL 5868249, at *2. The Fifth Circuit recently cautioned that "plaintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 729 (5th Cir. 2018).

Here, Plaintiff alleges Defendant inappropriately denied certain claims for payment for

IONM medical services Revolution provided to the Insureds, even though the "services were medically appropriate and necessary, covered by the applicable plan terms, and the claims should have been paid to Revolution as the Aetna Insureds' lawful assignee." (doc. 2-3 at 17.)  It alleges that under the terms of a representative ERISA plan, Defendant agreed to pay 60% of the costs for out-of-network physician services and hospital facility expenses, which covers the services rendered by Revolution, but it made claims determinations that had the effect of reimbursing less than the percentage of actual charges required by the plans. (*Id.* at 20 n.6.)  It asserts that "Defendant abused its discretion in administering the claims, breached the terms of the plan documents, and violated its legal obligations as a plan administrator under ERISA and federal common law each time it failed to make payment, made only partial payment, or delayed payment of benefits, without complying with ERISA requirements governing the claims process and adverse benefit determinations." (*Id.* at 20.)  These allegations are sufficient to state a plausible claim for recovery of benefits under ERISA. *See, e.g., Texas Gen. Hosp., LP*, 2016 WL 3541828, at *4 (finding medical providers' allegations that "[a]ll of the Plans require reimbursement of medical expenses incurred by United [s]ubscribers at usual, customary, and reasonable rates," that United was billed the "usual, customary, and reasonable rates for the particular medical services provided at [medical provider] but only paid a fraction of the amount billed, and that "payment of roughly 25% of the total billed charges falls far short of the usual, customary, and reasonable reimbursement rates required under the plans," provided "enough facts about the provisions of the ERISA plans to make their ERISA § 502(a)(1)(B) claims plausible, and to give United adequate notice as to which provisions they allegedly breached"); *Infectious Disease Drs., P.A. v. Bluecross Blueshield of Tex.*, No. 3:13-CV-2920-L, 2015 WL 4992964, at *3 (N.D. Tex. Aug. 21, 2015) (finding plaintiff had alleged

24

sufficient facts to state a plausible ERISA claim based on allegations that patients assigned their benefits to it, that plaintiff submitted patients' claims to defendant, and that defendant's failure to pay violated the terms of patient's plans, and rejecting defendant's argument that plaintiff must include the terms of the insurance plan); *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CIV.A. H-15-0297, 2015 WL 3756492, at *4 (S.D. Tex. June 16, 2015) (finding medical provider's allegations that the plan terms "allow for reimbursement of reasonable and necessary medical expenses at usual and customary rates" and that defendant made reimbursement at drastically reduced rates was sufficient to withstand dismissal because medical provider had adequately identified the "plan terms which [it] asserts confer[ ] the benefits it seeks to recover under § 502").

Defendant argues that Plaintiff fails to specify how it incorrectly calculated any particular benefits or why Revolution's services were covered and separately payable under the plan language, but such specificity goes beyond the pleading requirements that a plaintiff must satisfy to adequately state a claim for ERISA benefits. (*See* doc. 8 at 16); *see Innova Hosp. San Antonio, Ltd. P'ship*, 892 F.3d at 728 (citing *Electrostim Medical Services, Inc. v. Health Care Service Corp.*, 614 F. App'x 731 (5th Cir. 2015)) (declining "to adopt a requirement that plaintiffs must always include specific plan language in complaints alleging improper reimbursement under ERISA"). Plaintiff's allegations of improper reimbursement based on representative plan provisions provide sufficient factual detail to permit "the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *see also Innova Hosp. San Antonio, Ltd. P'ship*, 892 F.3d at 729 (quoting *id.*) ("Alleging improper reimbursement based on representative plan provisions—as the Hospital did here—may be sufficient to show plausibility under *Twombly* and *Iqbal* when there are enough

25

other factual allegations in the complaint to allow a court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'").   Moreover, "[t]he determination of whether Defendant[ ] ha[s] adequately complied with plan standards is necessarily a factually intensive inquiry that is inappropriate for resolution via a motion to dismiss." *Texas Gen. Hosp., LP*, 2016 WL 3541828, at *5; *see Grand Parkway*, 2015 WL 3756492, at *4 ("Whether the terms of the plans at issue in this case actually confer the benefits Plaintiff alleges can be raised on a motion for summary judgment.").   Because Plaintiff has alleged sufficient facts to state a plausible claim for ERISA benefits, Defendant's motion to dismiss this claim should be denied.

## C.    **Breach of Contract**

Defendant argues that the claim for breach of contract should also be dismissed because Plaintiff lacks standing to sue under the non-ERISA plans, and because the amended complaint fails to state a plausible claim for breach of contract. (doc. 8 at 8-14, 17-18.)

### *1.    Standing*

"As a general rule [in Texas], only parties to a contract and their successors-in-interest have standing to assert defects in the contract or seek its enforcement through breach claims." *Priester v. Long Beach Mortg. Co.*, No. 4:16-CV-00449-ALM-CAN, 2016 WL 9504324, at *7 (E.D. Tex. Dec. 16, 2016), *adopted by* 2017 WL 510350 (E.D. Tex. Feb. 8, 2017) (citing *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007)).   "[U]nder Texas law, a health care provider has standing to sue under a patient's insurance policy that is not governed by ERISA if it obtained an assignment of the patient's rights under the insurance policy." *Encompass Off. Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *7 (N.D. Tex. July 31, 2017) (citing *Electrostim Med. Servs., Inc.*, 614 F. App'x at 740).

26

For the same reasons that Plaintiff has standing to sue for ERISA benefits, it also has standing to sue for breach of contract.  As explained, the Insureds assigned their rights to benefits under the plans to Revolution.  Plaintiff has pleaded facts showing that those rights were assigned to it in the Revolution Bankruptcy.  Because an assignee of a contract has standing to enforce that contract, Plaintiff has alleged sufficient facts to show that Plaintiff has derivative standing to sue for breach of contract under the non-ERISA plans. *See Encompass Off. Sols., Inc.*, 2017 WL 3268034, at *7; *see also First–Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex.App.—Austin 2010, no pet.) ("An assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert, including bringing suit."). Accordingly, the motion to dismiss the breach of contract claim for lack of standing should be denied.

### 2.    *Failure to State a Claim*

Defendant argues that Plaintiff fails to state a plausible claim for breach of contract because it fails to plead "which contractual provisions were allegedly breached or how they were breached." (doc. 8 at 18.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc*., 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)).

Here, Plaintiff alleges that under the non-ERISA plans, Defendant agreed to pay claims for out-of-network medical services rendered in accordance with the allowable amount.  (doc. 2-3 at 22.)  It alleges that under the terms of a representative non-ERISA plan, Defendant agreed to pay

27

60% of the costs of "Hospital/Facility Services" for out-of-network providers like Revolution. (*Id.* at 22 n.7.) Plaintiff also alleges that "Revolution provided medical treatment to the Insureds, and submitted appropriate bills directly to Defendant for said medical services in accordance with the terms of the health benefit plans and Texas law," and that "Revolution has otherwise complied with all terms of the health benefit plans." (*Id.* at 22-23.) It asserts that "Defendant's failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to" the Insureds. (*Id.*) It claims that it suffered damages because of "Defendant's material breaches of contract and non-payment for services duly rendered." (*Id.* at 23.)

These allegations adequately identify the plan terms allegedly breached and are sufficient to permit the reasonable inference that Defendant breached the non-ERISA plans by failing to pay claims for covered services. *See, e.g., Innova Hosp. San Antonio, Ltd. P'ship*, 892 F.3d at 732 (finding complaint had adequately pleaded a breach of contract claim because "the Hospital has alleged the existence of valid contracts (non-ERISA plans), performance by the Hospital, breach of the contracts by the Insurers, and damages in the form of underpayment or non-payment sustained as a result of the breach"); *Electrostim Med. Servs., Inc.*, 614 F. App'x at 739 (determining that plaintiff had pleaded sufficient facts to support a claim for breach of contract when it alleged "the existence and validity of the provider agreement and attached a copy"; "it performed under the agreement by proving its services and products"; and that "BCBSTX breached a specific provision of the agreement the provision obligating BCBSTX to pay Electrostim's claims for covered products and services"); *Encompass Off. Sols., Inc.*, 2012 WL 3030376, at *8 ("[T]he court determines that the facts pleaded by Encompass regarding Defendants' failure to pay for services rendered, together

28

with the information attached to its pleadings regarding specific patients, services, and health care

plans, is sufficient at this stage to state a contract claim to defeat a Rule 12(b)(6) motion.").

Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claim for failure to state

a claim should be denied.[9]

## IV.  RECOMMENDATION

Defendant's motion to dismiss should be **DENIED**.

**SO RECOMMENDED** on this 22nd day of June, 2021.

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[9]Because it is recommended that the Defendant's motion to dismiss be denied, consideration of the surreply is unnecessary, so the motion for leave to file a surreply is denied as moot.

29